**Drake v. Drake**

*Bernard J. McLafferty*, for plaintiff.
*Kathleen J. Wasek*, for defendant.

TREDINNICK, *J.*, August 9, 1982—

## PROCEDURE

This divorce action was commenced by the husband on September 5, 1980. In addition to dissolution of the marriage, the complaint requested equitable distribution and child support for the parties 28 year old, mentally handicapped daughter. Defendant filed an answer on October 28, 1980 requesting alimony pendente lite, counsel fees, costs and expenses. No hearing has heretofore been requested or held on the alimony pendente lite claim. The issue of child support has not been pressed, and it is therefore, considered abandoned for present purposes.

The cause of action in divorce was referred to a master who submitted a report recommending that a decree of divorce be entered. On September 14, 1981, Judge Brown signed an order approving the master's recommendation. No exceptions were filed thereto, however, entry of a final decree has been deferred pending resolution of the remaining issues.

Hearing was held before the undersigned on February 22, 1982 at which time the following facts were established:

The parties were married on August 13, 1949. They resided together until September 1971. Two children were born of the marriage: Janet, age 28 and Scott, age 25. Janet is brain damaged, but obtained a high school degree and is currently living with a friend in their own apartment. Scott presently lives with the husband.

Mr. Drake is now 63 years of age. He is a paraplegic and has been unable to work since 1970. He has been living in the marital residence since the separation. He currently receives $402 per month

disability and $550 per month social security, for a total of $952 per month.

Mrs. Drake is 57 years of age. She left the marital residence on Labor Day, 1971, and has been supporting herself since that time. She presently works as a typist and grosses $214.40 per week from her full and part time jobs. Her net income from employment is $181.44 per week, or approximately $780.19 per month.

## MARITAL PROPERTY

The inventory filed by the wife claims sixteen items of marital property. Eight of these are not marital property, as ultimately either agreed to by the parties or properly excluded as such by the evidence.[1] These items are as follows:

*Wife Inventory*
*Item  Description (owner)*
*No.*

| | |
|---|---|
| 6 | 108 Shares American Electronic Labs. Inc. Common Stock (Scott Drake) |
| 7 | 15 Shares Pfizer Corp. Common Stock (Husband) |
| 10 | Plymouth Sedan Auto (Husband) |
| 11 | Western Savings Bank Account-$1,000 (Janet Drake) |
| 12 | Western Savings Fund Cert. $16,000 (Husband) |
| 13 | Germantown Savings Bank Cert.-$26,000 (Husband) |
| 14 | Pa. Power & Light Co. Bonds-$3,000 (Husband) |
| 15 | Common. Fed. S. & L. account-$544 (Janet Drake). |

---

1. Primarily by virtue of the fact that the items were acquired after separation. See Divorce Code §401(e)(4).

Husband's inventory lists a PSFS Account in the name of the wife in the amount of $5,000. This also is not marital property, being held by wife for the benefit of daughter, Janet.

Item 3 of the wife's inventory of marital property lists a checking account held in joint names at the time of separation in Fidelity Bank. Neither party was able to recall the amount in that account, and neither produced any documentary evidence to establish the amount. Consequently, there is insufficient evidence to identify the account, and it will be disregarded.

During the course of his testimony, however, husband stated that at the time his wife left, he had "about $1,500 in the savings account" in his name. A review of his inventory fails to reflect that item listed thereon, although it should have been. The source of that fund was his earnings alone, but it is nevertheless marital property, and will be included below.

The evidence established the following as marital property, at the values indicated.

1. (W. Inv.#1). *Real Estate:* Premises 732 Argyle Road, Glenside, Montgomery Co., Pa. Title in joint names. *Value:* $52,000.

2. (W. Inv. #2). *Rental Income from 732 Argyle Road:* $480.

3. (W. Inv. #4). *81 Shares Phila. Electric Co. Stock.* Title in joint names. *Value:* approximately $1,100.

4. (W. Inv. #5). *31 Shares United Technology Common Stock.* Title in husband's name. *Value:* approximately $1,200 (formerly Carrier Corporation stock.)

5. (W. Inv. #8). *Travelers Life Insurance Policy #2733511.* Insures life of husband in face amount

of $10,000. *Value* (as of Sept. 1, 1971): $2,969.17.[2]

6. (W. Inv. #8). *Prudential Insurance Co. of America.* Insures life of husband in face amount of $18,000 (term) and $8,000 (permanent). *Value:* (1981) $1,067. (No Sept. 1, 1971 value presented).[2]

7. (W. Inv. #8). *Sun Life Ins. Policy #1039267.* Insures life of husband. *Value:* (Sept., 1971) $271.29.[2]

8. (W. Inv. #9). *Nat'l Health & Welfare Retirement Assoc., Inc. Annuity.* For benefit of husband. *Value:* $1,133 (as of Sept. 1, 1971).[2]

9. (W. Inv. #9). *Teachers Ins. & Annuity Assoc. of America Retirement Annuity.* For benefit of husband. *Value:* $2,003.13 (as of Sept. 1, 1971).[2]

10. (W. Inv. #9). *College Retirement Equities Fund.* For benefit of husband. *Value:* $4,624.91 (as of Sept. 1, 1971).[2]

A number of questions were presented concerning inclusion of assets as marital property, and the date upon which the assets should be valued. Husband asserts that valuations should be as of the date of separation; wife argues that "current" valuations should be used. As to the valuation issue, three dates are of importance. The date of final separation was Sept. 1, 1971. The present divorce complaint was filed on Sept. 5, 1980.[3] The hearing date was February 22, 1982.

3. There was testimony that wife commenced a divorce action sometime in the mid-seventies. That action never progressed beyond the initial stages apparently. If date of commencement of the divorce action has a bearing on valuation, the date of filing of the complaint in the action before the court controls, and not some prior action which has in effect been abandoned.

2. By agreement of counsel, information as to values of these items was submitted to the court in the form of letters from the insurance companies involved received much after the hearing. The letters are part of the record.

The Divorce Code appears to be silent on the question of what date shall be utilized for valuing marital assets. As Judge Strassburger of Pittsburgh has noted [Kling v. Kling, 130 P.L.J. 73 (1982)]; §403(b) requires the parties to file an inventory and appraisement of all property owned or possessed at the time of commencement of the action, and Pa.R.C.P. 1920.33(a) provides that the appraisement is to value the assets as of the date the action was commenced. From this, he has concluded that the valuation date is the date of the filing of the complaint. The same result was reached in Rodich v. Rodich, Pa. Family Lawyer, Vol. II, No. 9, p. 207 (No. 80 Civ. 4753, Lackawanna Co.).

In the present case, a period of 17 months elapsed between the date of the filing of the complaint and the hearing date. It is conceivable that an asset could materially appreciate or depreciate where the span between complaint and hearing is of such length. Each of the parties called an appraiser to testify as to the value of Argyle Road. Unfortunately, the dates they used for valuation do not coincide. Wife's expert testified that as of November, 1981, the property was worth $55,000. On cross-examination, he expressed the opinion that the property was worth $51,500 in September, 1980. Husband's appraiser testified that the property had a value of $50,000 in the "latter part of 1980."

The fact that the procedural rules require the inventory to include an appraisement of value as of the date of filing of the complaint ought not be construed to require that the valuation of assets be *invariably* fixed as of that date. Frequently, a marital home must be sold. Customarily, a valuation is given solely for purposes of establishing in the order a minimum price which will be acceptable. Most

frequently in such situations, the division of the proceeds is by percentage. If the property brings more, the parties share in accordance with the designated percentage. Obviously, in such cases the latest valuation available is utilized.

In the case of assets which appreciate by virtue of natural economic forces (as opposed to the efforts or contributions of a party) there appears to be no reason to arbitrarily limit value to that which existed on the date upon which the complaint was filed. Indeed, equity would seem to require that division of property between the parties recognize the latest available value rather than an artificial value as of some earlier date. The value of Argyle Road has been set as of late 1981—as current as the testimony allows. Values of other assets, except as otherwise indicated, is similarly based on the latest available information.

The issue of valuation date of the insurance policies and annuities is much simpler to resolve. Section 401(e)(4) exempts from marital property "property acquired after separation. . . . " The accretion in value of life insurance cash surrenders values, and annuity values is directly attributable to the payment of premiums. Equitably, there is no reason to consider these accretions as redounding to the benefit of the non-owner spouse. The increase in value is property (dollars in this case) which has been acquired after separation. Hence, these assets have been valued as of the date of separation.

Husband contended that the Argyle Road property and the P.E. stock should be excluded, or as to the real estate, partially excluded under §401(e)(3). That section excludes as marital property that which has been " . . . acquired by gift, bequest, devise or descent, except for the increase in value

during the marriage." The property was purchased on April 28, 1955 for $13,500. A mortgage of $13,000 was executed by both parties, and title was taken in joint names. Down money and settlement costs approximated $1,400, which husband says he paid from his own funds. Wife testified these were joint funds. Prior thereto, in April, 1950, the parties had purchased another property—a three unit rental property (referred to as the Cresheim Road property). That was purchased for $12,500 cash. The purchase price was part of an inheritance received by husband. That property was sold on November 14, 1960 for $12,250, and (since the Argyle Road mortgage covered this property as well) as much of the proceeds as necessary were used to retire the mortgage.

The problem presented here has been carefully considered in an analagous context by Judge Brody in Johnson v. Johnson, 110 Montgomery 315 (1981).[4] Following rationale set forth in Maine and Illinois cases, she held that " . . . the placing of the marital home in joint names (is) a gift to the marital entity," (p. 321) and is therefore marital property. As pointed out, to hold otherwise would place a non-contributing spouse in a worse position under the 1980 Code than under previous law. Thus: "The one spouse may provide a house for the couple and title it jointly. After many years of marriage and little appreciation in value, the non-contributing spouse may be entitled to very little of the value of the house on divorce. Under the prior law, one-half of the value of the jointly held house would have

---

4. In that case $6,500 of wife's pre-marriage money was traceable to jointly owned real estate, and wife apparently contended that it was not marital property under the exclusion set forth in §401(e)(1).

been the property of the non-contributing spouse as a gift." (p. 320).

Had husband not titled the property in joint names, the exclusion of his inheritance would be mandated by §401(e)(3). His gift renders that section inapplicable.

Much the same contention is made with respect to the Philadelphia Electric Co. stock. Husband inherited 33 shares from his father in 1949. When the shares were distributed from the estate, they were registered in both parties' name. Husband states this occurred without any directions from him. Since that time, additional shares have been acquired by virtue of a stock split, and, apparently, purchase of 15 shares—probably by exercise of warrants. The 15 shares, acquired during the marriage, and with funds not traceable to the inherited stock, would in any event be marital property. The 66 shares are clearly traceable to the inheritance—a stock split does not increase the asset, it merely re-numbers it. However, when an individual transfers property into a joint tenancy with his or her spouse, a gift to the latter is presumed: Butler v. Butler, 464 Pa. 522, 347 A. 2d 477 (1975). That action removes the asset from the protection of §401(e)(3), assuming a valid gift. While husband asserts that he never intended a gift, such protestations made after estrangement between the parties are highly suspect. If there was an error in the issuance of the stock 30 or more years ago, husband should have corrected it. We conclude that the evidence is insufficient to overcome the presumption of a gift, and hold the stock to be marital property.

Copies of the share certificates for Carrier Corporation (now United Technology) were received in evidence. They establish that 6 shares were acquired by husband prior to the marriage, and 18

shares were purchased by him on July 6, 1972 after the separation. The remaining shares were acquired during the marriage, and are therefore marital property notwithstanding they were purchased by husband with his own funds, and were titled in his name alone.

## EQUITABLE DISTRIBUTION

The court is required to consider all relevant factors including ten specifically enumerated in §401(d) of the Divorce Code. One of the factors *not* to be considered, is marital misconduct. Thus the fact that wife left husband in 1972, whether justified or not, can play no part in deciding distribution of marital assets.

Initially, the impression arises that since husband is a paraplegic, unable to work, and the wife is gainfully employed, a division of assets should favor him rather than the wife. His affliction is indeed tragic, however, his income is in excess of that which the wife can earn—particularly when it is considered that his basic income at present is tax free. Furthermore, he is presently eligible to receive retirement income from the annuity contracts, although he has not chosen to do so. It will have been noted in the discussion of marital assets that he has somehow accumulated a substantial cash reserve. It appears his medical expense, which probably is, or may be substantial,[5] is covered by third party payors. Wife is not in good health, either, though her problems appear to be nothing like the magnitude of husband's disability. However, although gainfully employed, she appears to be at the limit of her potential in her present position and salary. No

---

5. There was no evidence as to his medical expenses.

evidence was received as to the husband's needs. The wife submitted a list of her expenses. She is barely able to meet her needs, and has accumulated no savings.

Apart from these considerations, very little else about the situation is remarkable. During the course of this moderately long marriage, a first for both, the husband was the primary bread winner. However, wife was employed from time to time, and was at all times the primary homemaker.

Item 401(d)(7) requires the court to consider "The contributions or dissipation of each party in the . . . preservation, depreciation or appreciation of the marital property. . . . " In that connection, we note that since the separation in 1971, the husband has been exclusively responsible for the maintenance of the Argyle Road property. He has prevented depreciation of the property, but the appreciation which has occurred is due not to him but to economic and market conditions. Furthermore, he has had the exclusive use of that jointly held property throughout that period. These two factors balance each other.

Upon a consideration of all factors, I conclude there should be an approximately equal division of the assets. As previously noted, husband presently resides in the marital home. He has made renovations to accommodate his disability, and has expressed a desire to remain in possession and to be awarded sole title. It is reasonable to accommodate this request. This means, however, that a cash award will have to be given wife. It would be impractical to award the value of the insurance or annuity contracts to her, and the value of the securities is much less than half the total value of the marital property. Accordingly, he will be awarded the real estate, subject to a lien thereon in favor of

wife, in an amount awarded to wife which will, when added to other assets awarded her, equal approximately half the value of the marital assets. In that connection, I note that the operative disposition is as set forth in the order, not the comment herein that there should be an "approximate equal division of marital property."

## ALIMONY

There is a suggestion that the claim for alimony has been abandoned. However, independent of that, Section 501(a) of the code allows an award of alimony only where a former spouse lacks sufficient property and is unable to support oneself through appropriate employment. Since defendant has been able to support herself for the past ten years, an award of alimony in the present case is not authorized by the code. Defendant's claim for alimony will, therefore, be denied.

## COUNSEL FEES

No evidence was received as to the extent of counsel fees or expenses incurred by either party, and it would thus appear that this claim has also been abandoned. Even if it has not been, however, we consider the parties in sufficient parity to each bear their own counsel fees and expenses.

## DECREE NISI

And now, August 9, 1982, it is ordered and decreed:

## A. EQUITABLE DISTRIBUTION

The marital property of the parties is allocated and awarded as follows:

*To Robert H. Drake:*

1. Travelers Life Insurance Policy #2733511.

2. Prudential Insurance Co. of America Policy.

3. Sun Life Insurance Co. Policy #1039267.

4. Nat'l Health & Welfare Retirement Association, Inc. Annuity.

5. Teacher's Insurance and Annuity Association of America Annuity Contract.

6. College Retirement Equities Fund Annuity.

7. Premises 732 Argyle Road, Cheltenham Township, Montgomery County, PA (as described in deed dated April 28, 1955 from Ellwood J. Bogden, widower, to Robert H. Drake and Jane M. Drake, his wife, recorded in the office of the Recorder of Deeds in and for Montgomery County, PA in Deed Book 2566 page 271) subject to a lien in favor of Jane M. Drake in the sum of $33,500 to secure the award hereinafter made to the said Jane M. Drake.

*Jane M. Drake:*

1. 81 shares Philadelphia Electric Common Stock.

2. 31 shares Carrier Corp. Common Stock (convertible to United Technology stock).

3. The sum of $33,500 to be paid within 30 days of the date hereof by Robert H. Drake in consideration of the award to him of the assets, including 732 Argyle Road, set forth above.

## B.  ALIMONY

The claim of Jane M. Drake for alimony is denied.

## C.  COUNSEL FEES

The claim of Jane M. Drake for counsel fees and expenses is denied.

Unless exceptions are filed hereto within ten days

of notice hereof, this decree shall become final as of course.